UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

OCT - 2 2024

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA,             )  <br>                                                              )  <br>      Plaintiff,                                            )  <br>                                                              )  <br> v.                                                             )  <br>                                                              )  <br> VISIONARY BOWLING PRODUCTS, L.L.C., )  <br> JOHN S. WONDERS, Sr., and             )  <br> JASON WONDERS,                            )  <br>                                                              )  <br>      Defendants.                                       ) | **4:24CR518 MTS/PLC** |

## INDICTMENT

The Grand Jury charges that:

1. From at least June 1, 1999, through October 20, 2019, defendant, Visionary Bowling Products, L.L.C. (Visionary Bowling), an active Missouri corporation, occupied a facility at 8709 Xograph Avenue (Facility) in Jennings, Missouri, located within the Eastern District of Missouri.

2. From at least June 1, 1999, and at all times material to this Indictment, defendant, John S. Wonders, Sr., was an owner and operator of Visionary Bowling.

3. At all times material to this Indictment, defendant, Jason Wonders, was a senior officer of Visionary Bowling with a significant role in the company's daily operations, executive level decisions, and management of the facility.

4. In the late 1970's, Faball Enterprises, Inc. (Faball) purchased the Facility to house its bowling ball manufacturing business. At some point around the late 1980s, John S. Wonders, Sr. purchased Faball and the Facility. On or about June 1, 1999, John S. Wonders, Sr. petitioned the City of Jennings to change the business name on the Facility's Commercial Occupancy Certificate from Faball to Visionary Bowling Services.

5. In July of 2018, the City of Jennings sought and acquired title to Facility due to unpaid property taxes. Visionary Bowling ceased production activities at the Facility at some time in 2018 or 2019. Nonetheless, Visionary Bowling certainly ceased production by July 25, 2019 as electricity service to the Facility was terminated on this date.

6. In August of 2019, the City of Jennings provided official notice to defendant John S. Wonders, Sr. that the City had acquired legal title and gave defendants sixty days in which to vacate the property, until October 20, 2019.

7. When defendants vacated the Facility in October of 2019 and the City of Jennings took possession of the property, the defendants abandoned numerous containers of various chemicals and industrial materials. On October 21, 2021, two years after the City of Jennings took possession, a fire occurred at the Facility. The fire burned for approximately 12 hours and multiple fire departments responded to the incident.  Nearby homes and businesses were evacuated due to the potential hazard posed by the burning chemicals, and the Jennings School District was given a "shelter in place" order. The following day a smaller fire rekindled and was later extinguished.

8. On November 9, 2021, Missouri Department of Natural Resources (MoDNR) hazardous waste enforcement personnel visited the site to assess whether the fires had impacted any potentially hazardous waste.  Enforcement personnel documented hundreds of discarded or abandoned containers in various stages of deterioration at the Facility. The MoDNR subsequently sought federal assistance in addressing the containers of discarded or abandoned materials at the Facility.

9. Since at least July of 2019 and continuing through Visionary Bowling's vacation of the Facility in late October of 2019, defendants John S. Wonders, Sr., Jason Wonders, and Visionary Bowling caused to be stored or disposed hazardous waste.

10. At no time material to this Indictment did Visionary Bowling, or any of its owners, operators, or employees possess a permit to either treat, store, or dispose of hazardous waste under RCRA.

## RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

11. The Resource Conservation and Recovery Act (RCRA) at Title 42 U.S.C. §§ 6901 to 6992, was enacted by Congress to address the serious environmental and health dangers from the management of hazardous waste from cradle to grave, including its generation, transportation, treatment, storage and ultimate disposal. The United States Environmental Protection Agency (EPA) regulates the storage, treatment, transportation, and disposal of hazardous waste pursuant to RCRA.

12. RCRA requires that the EPA identify and list solid wastes that meet the statutory definition of a hazardous waste. These identified and listed hazardous wastes are then subject to the regulations established by the EPA regarding the handling of such hazardous wastes. 42 U.S.C. § 6921.

13. In order to be regulated as a hazardous waste under RCRA, the material must first be a "solid waste." The term "solid waste," as used in the statute and the regulations promulgated thereunder, includes any solid, liquid, semi-solid, or contained gaseous material resulting from industrial, commercial, mining and agricultural activities. 42 U.S.C. § 6903(27) and 40 CFR § 261.2. Materials are considered solid wastes if they are either discarded or abandoned. Abandonment is defined by the regulations to include accumulation, storage or treatment in lieu of being abandoned or disposed. 40 CFR § 261.2.

14. A solid waste is considered hazardous under RCRA if it is either a specifically listed waste in the applicable regulations, or if it exhibits any of the following "characteristics": ignitability, corrosivity, reactivity or toxicity. The first category simply includes those wastes that are specifically listed in the Code of Federal Regulations. The second category (characteristic

wastes) includes wastes that are not hazardous in and of themselves, but are classified as hazardous because of characteristics that make them a danger to health and human safety. 40 C.F.R. §§ 261.20-261.24.

15. Hazardous wastes may only be transported to, treated by, stored at, or disposed of at facilities which have received permits properly issued pursuant to RCRA to handle such wastes, or which are designated to have a proper interim status prior to the issuance of a permit in accordance with RCRA. 42 U.S.C. §§ 6925 and 6926. These RCRA permits, issued by the EPA or by a state authorized to operate a hazardous waste program, impose regulatory conditions specifically tailored and limited to the type of hazardous waste handling activity at that particular facility. The facility may only handle those hazardous wastes and perform those activities covered by its permit. 40 CFR Part 264. Similarly, facilities with interim status are subject to stringent regulations designed to provide protection for human health and the environment.

16. The term "storage" in connection with hazardous waste, is defined under RCRA as the containment of hazardous waste, either on a temporary basis or for a period of years, in such a manner as to not constitute disposal of such hazardous waste. 42 C.F.R. § 6903(33).

17. The term "disposal" is defined under RCRA as the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment. 42 C.F.R. § 6903(3).

18. RCRA allows a State to apply for EPA authorization of the State's hazardous waste program. 42 U.S.C. § 6926(b). EPA has authorized Missouri to operate a hazardous waste program in lieu of the federal government's RCRA program. 40 CFR Part 272.

19. It is a crime to knowingly treat, store, or dispose of a hazardous waste without a RCRA permit authorizing such treatment, storage, or disposal. 42 U.S.C. § 6928(d)(2)(A).

## COUNT ONE
### (Unlawful Storage of Hazardous Waste)

20. Paragraphs one through nineteen are incorporated by reference.

21. Beginning on or about July 25, 2019, and continuing each day to, on or about, October 20, 2019, within the Eastern District of Missouri,

**VISIONARY BOWLING PRODUCTS, L.L.C.,
JOHN S. WONDERS, SR., and
JASON WONDERS,**

the defendants herein, knowingly stored or disposed of, and caused the storage or disposal of, hazardous waste, namely drums or other containers of characteristic hazardous waste, at the Visionary Bowling Products, LLC., Facility at 8709 Xograph in Jennings, Missouri, without a permit authorizing such storage or disposal of hazardous waste.

In violation of Title 42, United States Code, Section 6928 (d)(2)(A) and Title 18, United States Code, Section 2.

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
DIANNA R. COLLINS, #59641
Assistant United States Attorney